UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MELVIN J. COBB, SR.,

    Plaintiff,

v.                                                                CASE NO: 8:09-cv-2639-T-26MAP

SUNSHINE RESTAURANT MERGER
SUB, LLC, and CLAUDETTE ABBOTT,

    Defendants.
_____/

**O R D E R**

Before the Court is Defendant's Motion for Summary Judgment (Dkt. 23) and Plaintiff's Response. (Dkt. 25). After careful consideration of the submissions of the parties, the Court concludes that the motion should be denied.

**PERTINENT FACTS**

This is a removed action primarily for hostile work environment sexual harassment pursuant to both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. (Title VII) and the Florida Civil Rights Act, § 760.01, *et seq*., Florida Statutes (the FCRA).[1] Plaintiff Melvin J. Cobb, Sr., was a line cook for an IHOP Restaurant (the

---

[1] Plaintiff admits in his Response that he cannot prove the two counts of retaliation (counts II and IV). Apart from the hostile work environment claims, one count remains: state law battery (count V).

Defendant) at two different times, from January through April 2008, and from July 2008 through October 2009. There were no instances of sexual harassment during the first stint. In December 2008, however, Defendant Claudette Abbott, a female co-worker who was a server, walked up from behind Mr. Cobb as he was cooking eggs, reached her arm around his body, and grabbed his genitals. She simply giggled and walked away after Mr. Cobb said, "What the F are you doing, don't touch me." Again in January 2009, Ms. Abbott did the same thing.

Mr. Cobb testified that on the first occasion, Jim Hinds, the general manager, was also on the cooking line, and he told Mr. Hinds what Ms Abbott had done to him. Mr. Hinds told him that they were busy and he would take care of it later. Mr. Cobb testified that Mr. Hinds mentioned to him that he had written Ms. Abbott up, but Mr. Cobb could not verify whether that happened.

After the second incident in January 2009, he again told Jim Hinds. Mr. Hinds told him that he would talk to Ms. Abbott about the incident. Mr. Hinds again told Mr. Cobb that he had written Ms. Abbott up, but Mr. Cobb does not know whether Ms. Abbott was disciplined.

Mr. Cobb testified that after the second incident, which occurred in January 2009, he was harboring anger and finally decided he needed to talk with someone about it. At some point in May 2009 he spoke with Jack Thompson, the area coordinator, and then filed a complaint with the EEOC. After Mr. Thompson investigated the matter, Ms.

Abbott was transferred to another IHOP restaurant. On October 1, 2009, Mr. Cobb was discharged from IHOP for his failure to report to work on time.

Mr. Cobb received a copy of the employee handbook, which contained information on sexual harassment, on January 14, 2008. He also watched IHOP's harassment training video. He testified that he saw posters up in the work place about sexual harassment.

## APPLICABLE STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The Court must view the evidence in the light most favorable to the nonmoving party, in this case the Plaintiff. See Maniccia v. Brown, 171 F.3d 1364, 1367 (11th Cir. 1999). "The long and short of it is that the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." Chapman v. AI Transport, 229 F.3d 1012, 1026 (11th Cir. 2000).

## ANALYSIS

To prove a hostile work environment claim, a plaintiff must show the following:

> (1) that he or she belongs to a protected group; (2) that the employee has been subjected to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the

>harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798 (11th Cir. 2010) (quoting Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc)). In hostile work environment cases, the conduct must be "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" Mendoza, 195 F.3d at 1245-46 (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). It appears that the severity and pervasiveness are disjunctive, being separated by an "or" rather than an "and." Reeves, 594 F.3d at 808-809. Nevertheless, the conduct must be evaluated in context taking into consideration the totality of the circumstances and the following four factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. Mendoza, 195 F.3d at 1246.[2]

---

[2] Plaintiff cites three Seventh Circuit cases for certain propositions: Jackson v. County of Racine, 474 F.3d 493, 499 (7th Cir. 2007) (holding that sexual harassment need not be both severe and pervasive); Patton v. Keystone RV Co., 455 F.3d 812, 817 (7th Cir. 2006) (holding that one instance of sufficiently severe conduct is enough); and Worth v. Tyer, 276 F.3d 249, 268 (7th Cir. 2001) (holding that direct contact with an intimate body part is one of most severe forms of sexual harassment).

Although the frequency of the conduct was only twice, the severity of the conduct is far greater.[3] The conduct in this case was physically threatening and humiliating, unlike the myriad of cases that involve "brushing" or "touching."[4] Grabbing the crotch area of either sex certainly conveys a message that extends beyond workplace crudity, which, in large part under the case law, requires one to ignore. Mr. Cobb was not in a position to ward off Ms. Abbott or avoid her, because he was in the line cooking eggs, and he was totally unaware of Ms. Abbott approaching from the rear. The conduct interfered with his job performance for at least a moment, because it interrupted his cooking.

Even assuming at this juncture that the conduct is actionable, if Defendant exercised reasonable care and corrected the sexually harassing behavior in a timely fashion, then Defendant will not be vicariously liable. If the perpetrator of the harassment is a co-employee, as in the case here, as opposed to a supervisor, the employer is liable only "if it knew or should have known of the harassing conduct but failed to take prompt remedial action." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1278 (11th Cir. 2002). The issue in this case is whether Defendant took prompt remedial action based on the time span between the incidents in December 2008 and January 2009 and Ms. Abbott's transfer shortly after Mr. Thompson's investigation in May or June 2009.

---

[3] There is no question that the contact in this case was sexual in nature because the genitalia of human beings is by definition a sexual organ.

[4] None of the cases cited by Defendant involve grabbing the crotch area.

Viewing the evidence in the light most favorable to Plaintiff, he told his manager, Mr. Hinds, about each incident just after they occurred. Mr. Cobb testified that Mr. Hinds told him he would take care of Ms. Abbott on each occasion, but Mr. Cobb cannot confirm whether Ms. Abbott was actually written up. The record is lacking any testimony from Mr. Hinds in this regard. There is no question, however, that Ms. Abbott did not repeat the offense after the second time. Mr. Cobb takes the position that Ms. Abbott should have been disciplined earlier rather than waiting until after he spoke with Mr. Thompson some five months later.

Defendant cites <u>Fleming v. Boeing Co.</u>, 120 F.3d 242, 246-47 (11th Cir. 1997), for the proposition that the warnings or counseling Mr. Hinds allegedly gave Ms. Abbott were sufficient corrective actions as an initial measure to constitute "immediate and appropriate corrective action" under <u>Faragher v. City of Boca Raton</u>, 111 F.3d 1530, 1535 (11th Cir. 1997) (en banc). If Mr. Hinds did in fact give Ms. Abbott the warnings or counseling, then the second one appears to have worked. There are no reported incidents after January 2009. It would certainly be reasonable for an employer to give a first warning or counseling about the incident, and depending on the exact corrective action taken, for that action to fulfill the <u>Faragher</u> requirement of immediate and appropriate corrective action. That Plaintiff may have desired for Ms. Abbott to have been transferred earlier, does not negate Defendant's attempts, if they did in fact occur, to take corrective action. On this record, however, the Court must take into consideration that

Mr. Hinds may not have warned or counseled Ms. Abbott after each incident. Accordingly, summary judgment may not be prudently granted on this record.

It is therefore **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (Dkt. 23) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on January 11, 2011.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record